1  **DAVIS WRIGHT TREMAINE LLP**
   865 S. FIGUEROA ST.
2  SUITE 2400
   LOS ANGELES, CALIFORNIA 90017-2566
3  TELEPHONE (213) 633-6800
   FAX (213) 633-6899
4
   JAMES D. NGUYEN (State Bar No. 179370)
5    jimmynguyen@dwt.com
   SEAN M. SULLIVAN (State Bar No. 229104)
6    seansullivan@dwt.com
7
   Attorneys for Defendant
8  AMAZON.COM, INC.
9
10                  UNITED STATES DISTRICT COURT
11                 CENTRAL DISTRICT OF CALIFORNIA
12
13 BARRY ROSEN,                      ) Case No. **CV12-10413 ABC (Ex)**
                                      )
14              Plaintiff,            ) [Assigned to the Hon. Audrey B. Collins]
                                      )
15       vs.                         ) **DEFENDANT AMAZON.COM,**
                                      ) **INC.'S OPPOSITION TO**
16 AMAZON.COM, INC., and DOES        ) **PLAINTIFF'S MOTION FOR**
   1 TO 10,                          ) **PARTIAL SUMMARY JUDGMENT**
17                                    )
                Defendants.          ) Hearing Date: March 10, 2014
18                                    ) Time: 10:00 a.m.
                                      ) Courtroom: 680
19                                    )
                                      ) [Related Documents Filed Concurrently]
20                                    )
                                      ) Action Filed: December 5, 2012
21                                    ) Trial Date: TBD
22 _____ )
23
24
25
26
27
28

_____
AMAZON OPP. TO PLAINTIFF'S MOT. FOR PARTIAL SUMMARY JUDGMENT
DWT 23525203v1 0051461-000296

# TABLE OF CONTENTS

Page

I.     INTRODUCTION ................................................................. 1

II.    STATEMENT OF FACTS ..................................................... 2

       A.    Amazon's Website and Marketplace................................ 2

       B.    Amazon's Agreements and DMCA Standard Operating Procedure.... 4

       C.    Amazon's Response to Plaintiff's DMCA Notices.............................. 6

III.   PLAINTIFF FAILED TO MEET HIS EVIDENTIARY BURDEN.............. 7

IV.    AMAZON QUALIFIES FOR DMCA SAFE HARBOR PROTECTION..... 8

       A.    Amazon Did Not Have Knowledge of Infringing Activity Before Plaintiff's DMCA Notices And Then Expeditiously Disabled Access (§§ 512(c)(1)(A) & 512(c)(1)(C)).................................. 9

       B.    Amazon Does Not Have the Right and Ability to Control The Infringing Activity, Nor Does It Receive Any Financial Benefit Directly Attributable To It (§ 512(c)(1)(B)). .................................. 11

       C.    Amazon Meets the Technical Requirements for Safe Harbor .......... 14

             1.    Amazon Has Designated An Agent (§ 512(c)(2)). ................. 14

             2.    Amazon Has Adopted and Reasonably Implemented a Termination Policy (§ 512(i)(1)(A)). .................................. 15

             3.    Amazon Does Not Interfere With Standard Technical Measures (§ 512(i)(1)(B)). ................................................ 18

V.     AMAZON DOES NOT HAVE SECONDARY LIABILITY..................... 18

       A.    Plaintiff Did Not Show Direct Infringement by Sellers..................... 18

       B.    Amazon Is Not Contributorily Liable. ................................................ 19

       C.    Amazon Is Not Vicariously Liable..................................................... 20

VI.    AMAZON MADE FAIR USE OF THE PRODUCT IMAGE FILES......... 21

       A.    Purpose and Character of the Use ...................................................... 21

       B.    Effect upon Potential Market for or Value of Plaintiff's Work ........ 22

       C.    Remaining Factors.............................................................................. 23

VII.   PLAINTIFF FAILURE TO BE MEANINGFULLY DEPOSED PRECLUDES SUMMARY JUDGMENT ON THE ADDITIONAL DEFENSES.......................................................................................... 24

i

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

1

VIII.   CONCLUSION ............................................................................................. 25

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

# TABLE OF AUTHORITIES

<u>Page</u>

**Cases**

*A&M Records, Inc. v. Napster*,
　239 F.3d 1004 (9th Cir. 2001) ................................................................ 20, 22

*Anderson v. Air West, Inc.*,
　542 F.2d 1090 (9th Cir. Cal. 1976) ............................................................. 7

*Arista Records LLC v. Myxer Inc.*,
　2011 U.S. Dist. LEXIS 109668 (C.D. Cal. 2011) ....................................... 22

*Campbell v. Acuff-Rose Music, Inc.*,
　510 U.S. 569 (1994) ............................................................................ 21, 23

*Capitol Records, Inc. v. MP3Tunes, LLC*,
　2011 WL 3667335 (S.D.N.Y. 2011) .................................................. 12, 13, 15

*Castle Rock Entertainment v. Carol Pubilshing Group*,
　150 F.3d 132 (2nd Cir. 1998) ...................................................................... 22

*Celotex Corp. v. Catrett*,
　477 U.S. 317 (1986) ...................................................................................... 8

*Corbis v. Amazon*,
　351 F. Supp. 2d 1090 (W.D. Wa. 2004) ........................................... *passim*

*Davis v. The Gap, Inc.*,
　246 F.3d 152 (2d Cir. 2001) .................................................................. 21, 23

*Ellison v. Robertson*,
　357 F.3d 1072 (9th Cir.2004) .................................................................... 15

*Fox Broadcasting Co. v. Dish Network*,
　-- F.3d -- (9th Cir. Jan. 24, 2014) ............................................................ 22

*Harper & Row, Publishers, Inc. v. Nation Enters.*,
　471 U.S. 539 (1985) .................................................................................... 23

*Hendrickson v. Amazon.com, Inc.*,
　298 F. Supp. 2d 914 (C.D. Cal. 2003) ................................................. 13, 20

*Hendrickson v. eBay*,
　165 F. Supp. 2d 1082 (C.D. Cal. 2001) .................................................... 12

*Hotaling v. Church of Jesus Christ of Latter-Day Saints*,
　118 F.3d 199 (4th Cir. 1997) .................................................................... 20

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*In re Rubin*,
769 F.2d 611 (9th Cir. Cal. 1985) ........................................................................... 8

*Io Group, Inc. v. Veoh Networks, Inc.*,
586 F. Supp. 2d 1132 (N.D. Cal. 2008) ...................................................... 12, 13, 17

*Kelly v. Arriba Soft Corp.*,
336 F.3d 811 (9th Cir. 2003) ........................................................... 21, 22, 23, 24

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*,
545 U.S. 913 (2005) ................................................................................... 19, 20

*Olan Mills, Inc. v. Linn Photo Co.*,
23 F.3d 1345 (8th Cir. 1994) ......................................................................... 20

*Perfect 10, Inc. v. Amazon.com, Inc.*,
508 F.3d 1146 (9th Cir. 2007) ....................................................................... 20

*Perfect 10, Inc. v. CCBill, LLC*,
481 F.3d 751 (9th Cir. 2007) ......................................................................... 15

*Perfect 10, Inc. v. CCBill, LLC*,
488 F.3d 1102 (9th Cir. 2007) ....................................................................... 17

*Perfect 10, Inc. v. Cybernet Ventures*,
213 F. Supp. 2d 1146 (C.D. Cal. 2002) ........................................................... 16

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*,
494 F.3d 788 (9th Cir. 2007) ................................................................. 8, 19, 21

*Rosen v. Netfronts, Inc.*,
2013 U.S. Dist. LEXIS 96532 (C.D. Cal. July 9, 2013) ....................................... 23

*Sofa Entm't, Inc. v. Dodger Prods., Inc.*,
782 F. Supp. 2d 898 (C.D. Cal. 2010) ............................................................. 21

*Sony Corp. v. Universal City Studios*,
464 U.S. 417 (1984) ................................................................................... 23

*UMG Recordings, Inc. v. Shelter Capital Partners LLC, et al.*,
718 F.3d 1006 (9th Cir. 2013) ................................................................ *passim*

*UMG Recordings, Inc. v. Veoh Networks, Inc.*,
665 F.Supp.2d 1099 (C.D. Cal. 2009) ........................................................ 12, 17

*Wolk v. Kodak Imaging Network, Inc.*,
840 F. Supp. 2d 724 (S.D.N.Y. 2012) ....................................................... 11, 12, 13

AMAZON OPP. TO PLAINTIFF'S MOT. PARTIAL SUMMARY JUDGMENT
DWT 23525203v1 0051461-000296

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

**Statutes**

17 U.S.C.

§ 107 .................................................................................................................. 21
§ 109 .................................................................................................................. 19
§ 512(c)(1)(A)(iii) ............................................................................................... 9
§ 512(k)(1)(B) ..................................................................................................... 9

Digital Millennium Copyright Act ...................................................................... *passim*

**Rules**

Fed. R. Civ. P. 37(b)(2) ...................................................................................... 8

Fed. R. Evid. 602, 701, 802, 901 ........................................................................ 7

Fed R. Civ. P. 56(d) ............................................................................................ 7

**Other Authorities**

H.R.Rep. No. 105-551 (1998) ............................................................................. 13

S. REP. NO. 105-190 (1998) ................................................................. 9, 11, 13

AMAZON OPP. TO PLAINTIFF'S MOT. PARTIAL SUMMARY JUDGMENT
DWT 23525203v1 0051461-000296

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

# I.    INTRODUCTION

With the Digital Millennium Copyright Act, Congress intended to promote Internet commerce by immunizing Internet service providers from copyright liability, so long as they expeditiously "disable access" to allegedly infringing materials in response to copyright holders' complaints.  Plaintiff complained that four products offered for sale by third-party sellers through Amazon.com infringed his copyrights. He does not dispute that in response to his takedown notices, Amazon expeditiously removed the "Accused Products" from its catalog.  Before Amazon removed those products, only two items were purchased—both by (or for) Plaintiff (for which Amazon earned $1.52 in fees).  Nor does he seriously dispute that Amazon met the DMCA's technical requirements.  Thus, he cannot contest Amazon's DMCA safe harbor defense as to the Accused Products actually offered for sale on Amazon.com.

Instead, Plaintiff complains that Amazon did not remove image files for the Accused Products from its internal servers where they were kept for storage purposes. But he cannot defeat Amazon's DMCA safe harbor on this theory for a simple reason:  those image files were not generally accessible to the public.  Once Amazon removed the Accused Products from its catalog, the associated image files on its servers were not accessible by any Internet search engine.  The only way to locate those images was if a user copied the exact URL addresses *before Amazon disabled the public-facing product listings.*  Plaintiff has no evidence that anyone other than himself ever copied the image URLs, much less *accessed* these images through their URLs after Amazon disabled the products from its catalog.  Thus, Plaintiff complains about a theoretical harm that he cannot prove—which is hardly surprising given that he took almost no discovery.  Yet on that theory Plaintiff is seeking statutory damages far in excess of the commercial value of his works.

Congress did not intend that service providers lose their DMCA safe harbor over such theoretical harms.  To the contrary, the DMCA strikes a pragmatic balance between copyright and Internet commerce.  Amazon acted expeditiously in disabling

AMAZON OPP. TO PLAINTIFF'S MOT. FOR PARTIAL SUMMARY JUDGMENT
DWT 23525203v1 0051461-000296

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

public access to the Accused Products on its website, thus preserving whatever commercial value Plaintiff's works might have had.  Because Amazon complied with the DMCA's requirements —and has many other defenses—Plaintiff cannot prevail on summary judgment (or at trial), and the Court can find in favor of Amazon.

## II.      STATEMENT OF FACTS

### A.      Amazon's Website and Marketplace

Amazon operates the popular retail website www.amazon.com.  Croman Decl. ¶ 3.  In addition to its own retail offerings, Amazon permits third-party sellers to list and offer for sale products on its website, through a "Selling on Amazon" program (the "Amazon Marketplace.")  *Id.*, ¶ 4.  In 2013, there were more than 2 million Marketplace sellers, and over 1 billion units were sold through Amazon's websites worldwide.  *Id.*, ¶ 5.

Marketplace sellers may either fulfill (*i.e.,* store and ship) their products directly to purchasers, or pay Amazon to do so.  For products sold and fulfilled directly by sellers, Amazon simply provides a technology platform (including payment processing).  *Id.*, ¶ 6.  It is not the seller of record for products offered by Marketplace sellers; does not set the price of third-party offerings; does not possess seller-fulfilled products at any point before, during or after the transaction; and does not vet third-party offerings before listing to determine whether they comply with third-party intellectual property rights.  *Id.*  Nor could it, given the vast number of Marketplace sellers and their offerings on Amazon's website.  Instead, Amazon requires that Marketplace sellers comply with its contractual terms of use and site policies, including requiring sellers to comply with all intellectual property laws.

Each product offered for sale on Amazon.com has its own product "Detail Page."  *Id.*, ¶ 7.  (An example is in Croman Decl. ¶ 7).  These are the pages from which customers may view, research and purchase products.  Third-party sellers can create their own Detail Pages, or list their products for sale against existing Detail Pages. *Id.*  While Amazon determines the overall look, design and functionality of its

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

website and the Detail Page, sellers generally provide the actual content to describe their products.  Wiggans Decl. ¶ 3.  Amazon does not supply or control the information that Marketplace sellers submit.  Croman Decl. ¶ 8

To show potential buyers their product(s), third-party sellers may upload images to Amazon's servers for display with their product listings.  Croman Decl. ¶ 13; Wiggans Decl. ¶ 3.  Sellers select the images they want displayed on Detail Pages on which they want to list their products.  *Id.*  Amazon does not select the images the sellers upload or choose to associate with product listings.  Wiggans Decl. ¶ 3.  It does not prescreen or review any product images at the time they are uploaded by sellers.  *Id.*, ¶ 6.  Instead, Amazon requires sellers to warrant that they have the right to use images they upload, and responds to complaints about copyright violations pursuant to the DMCA's notice-and-takedown procedures, as explained below.

Amazon stores product image files used in conjunction with Detail Pages on dedicated servers for such image files.  *Id.*, ¶ 4.  These image servers are *separate* from the servers used to store the other product information that appears on Detail Pages.  *Id.*  Given the large quantity of data (*i.e.,* 360 terabytes) produced by the millions of images on Amazon's website, storing text-based product information and product image files on the same servers is impractical.  *Id.*, ¶ 7.  Storing images on separate servers improves the speed at which Amazon can serve its webpages.  *Id.*, ¶ 8.  It also allows product images to appear identically across multiple Detail Pages and in a user's order history, so sellers can represent identical products in consistent fashion and display the product ordered by a user in their order history.  *Id.*, ¶ 9.

Each image file on Amazon's image servers has a unique URL (uniform resource locator) address - e.g., "http://ecx.images-amazon.com/images/ I/516zMFaXOZL._SL500_AA300_.jpg".  *Id.*, ¶ 10.  When a user calls up a Detail Page by clicking on a product listing, the system that assembles the Detail Page makes a call to Amazon's image servers, which serve the image(s) associated with that Detail Page.  *Id.*   When the Detail Page is assembled, the *image* URL is not

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

readily visible; only the *Detail Page* URL is visible in the search or address bar of the user's web browser. *Id.*, ¶ 11. The image's URL appears only if a user "right-clicks" on the image (or first clicks on the image then right-clicks on the blown-up image), then (1) copies and pastes the URL; (2) prints the product image; (3) opens the image in a new tab; or (4) views "Properties" for the product image. *Id.*

Once a Detail Page is disabled or removed from public access on Amazon's website, the image file URL is *not* available to the public and cannot be independently located on the Internet (via search engine). *Id.*, ¶ 13. Amazon assigns the image files an "opaque" identifier – a randomly generated alphanumeric sequence with no information describing the image. *Id.* (For example, an image file of Ali Landry does not contain "Ali" or "Landry" in the identifier.) Thus, image files are not embedded with, and do not contain, searchable data that can be captured by a search engine if a user entered a query for the image's subject. *Id.* After a Detail Page is disabled from public access, the only way to access the image file is to enter the exact URL in a web browser's address field; generally, this requires the user to have copied the URL address *before* Amazon disabled the Detail Page. *Id.* Image files cannot be purchased from Amazon's image servers. Skovgard Decl., ¶ 6.[1]

**B.     Amazon's Agreements and DMCA Standard Operating Procedure**

To sell products on Amazon.com, third-party sellers must open a seller account. Croman Decl. ¶ 9. The vast majority select between two primary plans: individual or professional. *Id.,* ¶ 10. With an individual account, a seller is charged a per-item fee (currently $0.99) for every item it sells on Amazon.com. *Id.*, ¶ 10(a).

---

[1] While Plaintiff claims that he accessed at least one Accused Product image through a Google search, he offers no documentary proof of that search or detail on when and how he did so. Nor could he verify this at deposition. Ex. Z ("Rosen Depo. II"), Rosen Depo. II 123:22-126:14. Google indexes webpages and can cache content found online, making it possible that some Detail Pages (and associated product images) could have been found through search engines even after Detail Pages were disabled. Wiggans Decl. ¶ 14. But this does not demonstrate the images were publicly available from Amazon's servers after removal of the Detail Pages; at most, they might have been available from *Google's* servers for some period of time.

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

With a professional account, a seller pays a monthly subscription fee (currently $39.99), but no per-item fee. *Id.*, ¶ 10(b). Contrary to Plaintiff's unsupported allegations (Motion at 7), Amazon does not charge a per-item *listing* fee: sellers either pay a flat monthly fee or a per-sale fee (plus additional referral fees and variable closing fees unrelated to listings or uploaded images). *Id.,* ¶¶ 10(a), (b).

Sellers must also accept an applicable seller agreement; each agreement requires sellers to comply with all applicable laws, which include intellectual property laws. *Id.*, ¶¶ 11-12, 14-15 and Exs. F, G. Sellers must also agree to seller policies posted on Amazon's website. *Id.,* ¶ 12, and Ex. F. The policies contain strict requirements about upload and use of product image files. *Id.*, ¶ 14, and Ex. G. They expressly dictate that sellers may not list "prohibited products," including any item, link, or material that infringes third-party intellectual property rights. *Id.* Violating these policies can result in cancellation of listings, and limitations, suspension or full removal of a seller's listing privileges. *Id.*, ¶¶ 15-16, Exs. G, H.

Amazon uses a DMCA-compliant procedure for receiving infringement complaints and conveying them to sellers. Skovgard Decl., ¶¶ 3-8. It designated with the Copyright Office an agent to receive DMCA takedown notices. *Id.*, ¶ 4. Its website posts a "Notice and Procedure for Making Claims of Copyright Infringement" and provides an automated form to make such complaints. *Id.*, ¶ 3. Amazon employs two teams to respond to takedown notices, including a dedicated group of copyright agents. *Id.*, ¶ 5. It also maintains a DMCA Standard Operating Procedure to address repeat violators. *Id.*, ¶ 7, and Ex. K. Amazon can and does terminate selling privileges for sellers who violate its policies, including repeat copyright violators. *Id.*; Croman Decl. ¶¶ 15-16, Exs. G, H. It also suspends and blocks sellers who try to re-list items removed due to an infringement notice. Skovgard Decl. ¶ 7, and Ex. K. In 2013, Amazon blocked 5,873 seller accounts for policy violations (though not all for repeat infringer violations). *Id.*, ¶ 8.

AMAZON OPP. TO PLAINTIFF'S MOT. FOR PARTIAL SUMMARY JUDGMENT
DWT 23525203v1 0051461-000296

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

## C.    Amazon's Response to Plaintiff's DMCA Notices

Plaintiff sent DMCA notices for four products offered by third-party sellers. Amazon expeditiously responded to each of Plaintiff's notices:

| Plaintiff's DMCA Takedown Notice | Amazon's Response |
|---|---|
| December 19, 2010 notice of seller "magsnmoreamaz's" print of photograph of Erika Eleniak. Plaintiff's SUF 6 & 7. | The next day, Amazon let Plaintiff know it was removing the product from its Website.  SUF 8. |
| May 26, 2011 notice of seller "JG Autographs, Inc.'s" print of a photograph of Charlotte Lewis.  SUF 6, 17-18 | The same day, Amazon let Plaintiff know it was removing the product from its Website.  SUF 19. |
| November 11, 2012 notice of seller "Arrick's Collectables'" prints of two Ali Landry photographs.  SUF 34, 26-27. | Eight days later, Amazon let Plaintiff know it was removing the product from the Website.  SUF 28. |

Amazon removed the Detail Pages for the Accused Products from its catalog, disabling access to those products and making the product images unsearchable by search engines.  Tarpey Decl. ¶¶ 5, 10-11; Skovgard Decl. ¶ 11.  It also notified the sellers about Plaintiff's complaints.  Tarpey Decl. ¶¶ 5, 11, and Ex. D; Skovgard Decl. ¶ 11, and Ex. M.  There were only two sales of any Accused Products; Plaintiff (or his friend) made both buys as part of his investigation on the same day he sent a takedown notice (before Amazon could respond).  Skovgard Decl. ¶¶ 18-19, and Ex. O; SUF 34, 26-27; Sullivan Decl. ¶ 29, Ex. Z ("Rosen Depo. II") at 130:5-133:6. The sellers fulfilled both orders.  Skovgard Decl. ¶ 19 and Ex. O.  Amazon earned a mere $1.52 in fees from those sales.  *Id.*  Plaintiff has no evidence that anyone other than he accessed the Accused Products' images from the image servers.  Rosen Depo. II 118:8-121:14.  He persisted with this suit because he saved the image URLs before the Detail Pages were disabled and accessed the image files on Amazon's servers (uploaded by third-party sellers) with those URLs.  When Plaintiff sued, Amazon removed the images files from its image servers (and one was removed in

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

February 2011, *before* this suit).  Skovgard Decl. ¶¶ 14 and 17.

### III.   PLAINTIFF FAILED TO MEET HIS EVIDENTIARY BURDEN.

The Motion suffers from serious evidentiary defects which alone warrant its denial.  First, Plaintiff's "evidence" is mostly his declaration.  But at his (repeatedly rescheduled) deposition on January 22, 2014, he could not recall facts averred in his declaration dated *only five weeks earlier.*  Despite repeated issues with his ability to testify at prior sessions, Plaintiff showed up for this Court-ordered deposition tired and "foggy," having taken Oxycodone, and could not answer anything about his declaration.   Rosen Depo. II 25:17-26:9; 64:6-14.  He was given a break to nap and his counsel allowed him to continue testifying (Sullivan Decl., ¶¶ 29-36), but he still could not answer basic questions about his profession, his works, or this case.  *Id.*, 61:11-67:17.  He insisted that everything was covered by his declaration but refused to answer specifics.  *See id.*  Because Amazon has repeatedly been denied meaningful cross-examination of Plaintiff, the Court should disregard all assertions in his declaration or at least find them disputed.  *Anderson v. Air West, Inc.*, 542 F.2d 1090 (9th Cir. Cal. 1976) (party's "refusal to appear for deposition as ordered and to assist in the determination of…factual issues constitutes a forfeiture on his part…of the right to contest those factual issues."); Fed. R. Evid. 602, 701, 802, 901.[2]

Second, the Court should disregard Plaintiff's repeated arguments about Amazon's supposed "absence of evidence" – *i.e.,* that Amazon did not provide documents or interrogatory answers sufficient to support its defenses.  Motion at 3, 8-11, 17, 20, 22-25.  As summarized below and in its Statement of Genuine Disputes, Amazon has abundant evidence.  Amazon answered Plaintiff's boilerplate interrogatories and document requests more than sufficiently to support its defenses, considering much of its evidence was to come by way of witness testimony.  But Plaintiff never moved to compel further responses or to preclude Amazon from

---

[2] Alternatively, the Court should provide another Rule 56(d) continuance and order Plaintiff to substantively answer questions before ruling on his factual assertions.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

offering additional evidence, suggesting that he deemed Amazon's responses to be satisfactory.  Nor did he ever serve additional discovery asking for more information or request a single deposition.  Sullivan Decl. ¶¶ 3-19.  Plaintiff cannot argue that Amazon has insufficient evidence merely because it did not answer questions *he never asked.*[3]  It is entirely proper for Amazon to rely on its witness declarations.

For example, Plaintiff never asked Amazon to identify every seller it ever terminated nor suggested that Amazon's discovery responses were incomplete on this topic.  Sullivan Decl. ¶¶ 8-10.  Yet he argues that Amazon had to produce such evidence in order to establish that it even has a repeat infringer policy.  Motion at 9, 20, 22.  Amazon cannot be precluded from testifying about its policy simply because it did not produce evidence of all instances in which it enforced its policy—discovery that was never requested and would have been vastly overbroad and unduly burdensome as unrelated to Plaintiff's claims. The Court should deny the Motion due to Plaintiff's failure to satisfy his initial burden to present competent evidence.

## IV.    AMAZON QUALIFIES FOR DMCA SAFE HARBOR PROTECTION.

The Court can find the DMCA safe harbor facts are materially disputed (or instead can find in Amazon's favor).  "One of the stated purposes of [the DMCA] [i]s to 'facilitate the robust development and worldwide expansion of electronic commerce, communications, research, development, and education in the digital age.'"  *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 794 n.2 (9th Cir. 2007).  Congress recognized that carrying out ordinary operations requires Internet

---

[3] *See Celotex Corp. v. Catrett,*477 U.S. 317, 326 (1986) (J. White, concur opn.) ("It is not enough to move for summary judgment . . . with a conclusory assertion that the (opposing party) has no evidence to prove his case.").  *Celotex* states that the nonmoving party can meet its burden to oppose "by her own affidavits, or by the 'depositions, answers to interrogatories and admissions on file.'"  *Id.*, at 323-324.  This contemplates that the nonmoving party is not limited to its written discovery responses, but an introduce evidence by affidavit or otherwise.  Plaintiff's argument is akin to asking for a discovery sanction to preclude evidence, which is available *only* against a party who "fails to obey an order to provide or permit discovery" – something Plaintiff never obtained here. Fed. R. Civ. P. 37(b)(2); *In re Rubin*, 769 F.2d 611, 616 (9th Cir. Cal. 1985) (noting that 37(b) is "a rule applicable only to cases in which a party has disobeyed a court order").

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

service providers to do "all kinds of acts that expose them to potential copyright infringement liability," such as making electronic copies to store or transmit information.  The DMCA strikes a balance between "service providers and copyright owners to cooperate to detect and deal with copyright infringements that take place in the digital networked environment."  S. REP. NO. 105-190, at 20 (1998)).

Applicable here, the section 512(c) safe harbor protects service providers from liability "by reason of the storage at the direction of a user of material that resides on a system or network controlled or operated by or for the service provider."   Plaintiff does not dispute that Amazon is a service provider[4] or that it performs the function covered by section 512(c) – *i.e.,* stores material (image files) on its system at the direction of users (third-party sellers).  Amazon also meets the other requirements.

**A.  Amazon Did Not Have Knowledge of Infringing Activity Before Plaintiff's DMCA Notices And Then Expeditiously Disabled Access (§§ 512(c)(1)(A) & 512(c)(1)(C)).**

Amazon had no actual knowledge and no reason to know about the disputed image files which sellers uploaded until it received Plaintiff's takedown notices for each Accused Product.  Skovgard Decl. ¶ 9; Tarpey Decl. ¶¶ 3, 8.  In response to each takedown notice, Amazon expeditiously removed access to the relevant Detail Pages:  within one day for the Erika Eleniak and Charlotte Lewis products, and within about a week for the two Ali Landry products.  Skovgard Decl. ¶¶ 11-12, and Exs. M-N; Tarpey Decl. ¶¶ 5-6, 10-12, and Exs. B, D, E.  Indeed, Plaintiff does not challenge Amazon's actions in removing the Detail Pages.

Instead, Plaintiff's entire case is focused on the *product image files* uploaded by third-party sellers – as opposed to the actual products offered for sale.  Plaintiff argues Amazon is liable because it did not remove the image files from its storage

---

[4] 17 U.S.C. § 512(k)(1)(B) defines "service provider" broadly as "a provider of online services or network access, or the operator of facilities therefore."  Amazon has previously been found to qualify.  *Corbis v. Amazon*, 351 F. Supp. 2d 1090, 1100 (W.D. Wa. 2004).

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

servers.  But the DMCA requires that service providers "remove, *or disable access to*" allegedly infringing material upon notice from rights holders.  17 U.S.C. § 512(c)(1)(A)(iii) (emphasis added).  As the Ninth Circuit recently acknowledged, "the language of the statute recognizes that one is unlikely to infringe a copyright by merely storing material that no one could access, and so includes activities that go beyond storage…Section 512(c)(1)(A)(iii) also reinforces this reading by allowing the service provider either 'to remove, or *disable access to*, the material,' suggesting that if the material were still being stored by the service provider, but was inaccessible, it might well not be infringing."  *UMG Recordings, Inc. v. Shelter Capital Partners LLC, et al.*, 718 F.3d 1006, 1019 (9th Cir. 2013).  Thus, Plaintiff's Motion—and entire case—rests on an overly restrictive reading of the statute.

Once Amazon removed the Detail Pages of the Accused Products, the image files on its servers associated with those products were no longer publicly accessible.  The image files were not separately searchable in Amazon's catalog (using the "Search" function on Amazon.com) or through an Internet search engine.  Wiggans Decl. ¶ 13.  The only way to access the image files was to have copied (*before* Amazon removed the Detail Pages ) and type in the file URL address (linking to Amazon's image server.)  *Id.*  Yet there is no evidence that anyone other than Plaintiff ever copied the URLs for the images in question, or that anyone other than him ever used those URLs to access the images from Amazon's servers.  And when Plaintiff filed this suit, Amazon removed the images from its servers.  Thus, for all practical purposes, Amazon disabled access to the images on its servers.

Plaintiff claims (Motion, at 7) that Amazon was on notice that its practices violated the DMCA in 2007 when he previously sued it.  But his prior case was resolved without any findings of liability against Amazon; a six-year old settlement is hardly evidence that Amazon's practices are legally insufficient.  Further, Plaintiff did not complain about the images on Amazon's servers for four Accused Products until filing this case - despite allegedly discovering as early as 2010, and again in

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

2011 and 2012, that those image files remained accessible even after Amazon removed the Detail Pages in response to his takedown notices (and only because he had the exact URL links to Amazon's image server.)  Even then, he did not notify Amazon that he still had concerns, such as to ask why Amazon (in response to each notice) removed the Detail Pages but not the image file available at the URLs.  The DMCA contemplates cooperation between rights holders and Internet service providers.  S. REP. NO. 105-190, at 20.  Amazon cooperated by promptly responding to the takedown requests for the Accused Products.  If Plaintiff was dissatisfied with the fact that he (and he alone) still had access to the images on Amazon's storage servers, he could have brought that to Amazon's attention.  Yet he remained silent, suggesting Amazon's responses to his notices in 2010, 2011, and 2012 were adequate until he filed this case.  Plaintiff's sandbagging demonstrates the hypothetical nature of his claims, and is inconsistent with the cooperation contemplated by the DMCA.[5]

**B.     Amazon Does Not Have the Right and Ability to Control The Infringing Activity, Nor Does It Receive Any Financial Benefit Directly Attributable To It (§ 512(c)(1)(B)).**

Contrary to Plaintiff's suggestion, "the right and ability to control infringing activity" is not coterminous with "the ability of a service provider to remove or block access to materials posted on its website or stored in its system." *Corbis*, 351 F. Supp. 2d at 1110.  Instead, there must be "something more;" "the service provider must 'exert[] substantial influence on the activities of users.'" *Shelter Capital*, 718 F.3d at 1030.  This includes "prescreening content, rendering extensive advice to users regarding content and editing user content." *Wolk v. Kodak Imaging Network, Inc.*, 840 F. Supp. 2d 724, 748 (S.D.N.Y. 2012).  Plaintiff offers no such evidence.

The Accused Products were all sold and fulfilled directly by third-party sellers (and only two were ever sold, and only for Plaintiff).  Skovgard Decl. ¶¶ 16, 18-19.

---

[5] Amazon's "Lack of Knowledge" affirmative defense is a corollary to this component of the safe harbor defense, and is valid for reasons explained above.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

For such products, Amazon merely provides a technology platform.  Croman Decl. ¶ 6.  It did not set the sellers' price for the Accused Products; did not possess the products at any time point before, during or after the transaction; and did not vet the products before they were initially offered to determine whether they complied with third-party intellectual property rights.  *Id*.  Amazon also did not prescreen or review the product image files when they were uploaded by the sellers.[6]  Wiggans Decl. ¶ 6.  For such a system, Amazon has been found to not have the right or ability to control infringing activity.  *Corbis*, 351 F. Supp. 2d at 1110 ("Amazon does not preview the products prior to their listing, does not edit the product descriptions, does not suggest prices, or otherwise involve itself in the sale.").

Nor could Amazon prescreen or review sellers' uploaded content given more than 2 million active Marketplace sellers.  Croman Decl. ¶ 5.  Where the size of a site and the volume of user content preclude the service provider from controlling infringing activities, it does not have the right and ability to control such activity.[7]  While Amazon is able to remove (and, when notified, did remove) access to the Accused Products, that type of control is implied by the safe harbor; it is not "control of infringing activity" that takes a service provider out of the safe harbor.[8]  Plaintiff

---

[6] Plaintiff alleges that Amazon requires "pre-approval" for Entertainment photos (Motion at 6), but his evidence does not support this.  While Amazon does require pre-approval before accepting sellers for certain *categories* of listings, none of the Accused Products were listed in any category requiring pre-approval; they were all listed in the "Everything Else" category, as evidenced on the top line of the Detail Pages produced by Plaintiff.  *See* Plaintiff's Exhibits 2, 6, 11; Sullivan Decl. ¶¶ 25-28.  As reflected in Plaintiff's Exhibit 22, "Everything Else" is *not* one of the categories requiring pre-approval.

[7] *Io Group, Inc. v. Veoh Networks, Inc.*, 586 F. Supp. 2d 1132, 1153 (N.D. Cal. 2008)(Veoh "has received hundreds of thousands of video files from users. . . no reasonable juror could conclude that a comprehensive review of every file would be feasible."); *Wolk*, 840 F. Supp. 2d at 748 ("Photobucket does not engage in such activities, and, considering that millions of images are uploaded daily, it is unlikely that this kind of prescreening is even feasible.").

[8] *Shelter Capital*, 718 F.3d 1030; *Io*, 586 F. Supp. 2d at 1151; *Hendrickson v. eBay*, 165 F. Supp. 2d 1082, 1093 (C.D. Cal. 2001); *UMG Recordings, Inc. v. Veoh Networks, Inc.*, 665 F.Supp.2d 1099, 1112 (C.D. Cal. 2009); *Capitol Records, Inc. v. MP3Tunes, LLC*, 2011 WL 3667335, at *12 (S.D.N.Y. 2011).

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

complains that Amazon did not remove image files from its image server.  But Amazon did remove the Accused Products from the stream of commerce and effectively prevented any searching for the image files.  In this situation, it cannot be vicariously liable for mere storage of image files.  *Shelter Capital.,* 718 F.3d at 1019.

Nor did Amazon receive a financial benefit directly attributable to the infringing activity.  In setting this requirement, Congress distinguished between service providers engaged in "legitimate business" that charge the same for infringing and non-infringing material, and those "where the value of the service lies in providing access to infringing material."  S.Rep. No. 105-190, at 44-45; H.R.Rep. No. 105-551, pt. 2, at 53-54 (1998).  A service provider receives direct financial benefit only if it *promotes* infringing activity to enhance business, or *charges more* for infringing material than for non-infringing material.  *Capitol Records,* 2011 WL 3667335, at *11; *Wolk*, 840 F. Supp.2d at 748.  Where the defendant adequately polices its system, responding promptly to infringement notices, terminating infringing material and terminating repeat infringer accounts, the defendant "has taken steps to reduce, not foster, the incidence of copyright infringement on its website."  *Io*, 586 F. Supp. 2d at 1154.  Here, Amazon conducts a legitimate business that does not promote availability of infringing content, attract customers based on infringing content, or charge sellers or buyers more for infringing content.  Its policies prohibit uploading infringing content.  Like Veoh in the *Io* case, Amazon takes down infringing content, promptly responds to infringement notices, and terminates repeat offenders.  Croman Decl. ¶ 15-16; Skovgard Decl. ¶¶ 3-8, 9-12; Tarpey Decl. ¶¶ 3-6, 8-12. *See Hendrickson v. Amazon.com, Inc.*, 298 F. Supp. 2d 914, 918 (C.D. Cal. 2003); *Corbis*, 351 F. Supp. 2d at 1109-1110.

The only disputed activity is archival storage of product image files that were accessible *only* if someone copied the URL links to Amazon's image server before Amazon received Plaintiff's notices and disabled the Detail Pages.  For the image files (as opposed to the Accused Products), the evidence is clear that Amazon did not

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

promote the files, sell them, or otherwise provide ready public access to them. Indeed, no purchases could have been made from the image files, and their mere storage does not translate into sales of any Accused Products (which is how Amazon obtains fees). *See* Skovgard Decl. ¶ 6. This is especially true once Detail Pages are removed and the Accused Products are no longer offered for sale; after then, continued storage of image files has no commercial value and does not show that Amazon received direct financial benefit from any *infringing* activity.[9]

Finally, a post-sale product image appearing in a buyer's order history provides no direct financial benefit to Amazon.[10] Once Detail Pages are removed, the product can no longer be purchased. Skovgard Decl. ¶ 6.

### C. Amazon Meets the Technical Requirements for Safe Harbor

#### 1. Amazon Has Designated An Agent (§ 512(c)(2)).

As Plaintiff admits, Amazon designated an agent with the Copyright Office to receive infringement notices. SUF 52. But he complains that the contact information is listed differently in Amazon's designation form with the Copyright Office than as posted on Amazon's website. The differences are immaterial. The contact routes which Plaintiff used to send his notices here – facsimile and email – are identical on both Amazon.com and as recorded with the Copyright Office. *See* Skovgard Decl. ¶¶ 3-4. While the mailing address on the DMCA agent form is listed differently, all postal mail sent to that address is forwarded to Amazon. *Id.*, ¶ 5. And this is irrelevant because Plaintiff did not mail a notice to Amazon.

---

[9] Indeed, Amazon received no financial benefit from any knowingly infringing activity. The *only* sales of Accused Products occurred the same day Plaintiff sent his DMCA notice for the Ali Landry products, before Amazon had any reasonable chance to remove the corresponding Detail Pages. Skovgard Decl. ¶¶ 18-19, and Ex. O; Rosen Decl. ¶19. These buys were done by or for Plaintiff (for his investigation) and cannot be considered infringing activity. Rosen Decl. ¶ 19. (Even if counted, they generated a mere $1.52 in fees for Amazon – hardly a financial benefit). No sales occurred after the Detail Pages were disabled. Skovgard Decl. ¶¶ 6, 18-19.

[10] Further, a user's order history is private to the user; unless the user gives out his/her password, any information or images displayed on the order history cannot be accessed by another person or search engines. Wiggans Decl., ¶ 15. There is no evidence that anyone other than Plaintiff accessed the images in his order history.

---

AMAZON OPP. TO PLAINTIFF'S MOT. FOR PARTIAL SUMMARY JUDGMENT
DWT 23525203v1 0051461-000296

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

The purpose of designating an agent is so that people like Plaintiff can send a takedown notice that is actually received.  In the case cited by Plaintiff, *Ellison v. Robertson,* 357 F.3d 1072, 1080 (9th Cir.2004), notices may have been lost because emails sent to an old email address were not forwarded to the new address.  Here, in contrast, it is undisputed that Amazon received and promptly responded to Plaintiff's notices.  Its agent designation meets the statutory requirements.

### 2.   Amazon Has Adopted and Reasonably Implemented a Termination Policy (§ 512(i)(1)(A)).

Plaintiff argues Amazon did not reasonably implement its repeat infringer policy due to supposed lack of evidence in Amazon's discovery responses.  As explained above, Amazon was not obligated to produce evidence of every repeat infringer it has ever terminated.  Nor is such evidence necessary for the safe harbor.

Courts have found that Amazon has adopted and reasonably implemented a policy that provides for termination in appropriate circumstances of subscribers and account holders who are repeat infringers.  *Corbis*, 351 F. Supp. 2d at 1100 (citing *Ellison,* 357 F.3d at 1080).  Even on a fresh review, it is undisputed that Amazon has a policy to terminate repeat infringers in appropriate circumstances.[11]  Skovgard Decl. ¶ 7.  It reasonably "'implements' a policy if it has a working notification system, a procedure for dealing with DMCA-compliant notifications, and if it does not actively prevent copyright owners from collecting information needed to issue such notifications."  *Perfect 10, Inc. v. CCBill, LLC*, 481 F.3d 751, 758 (9th Cir. 2007); *Capitol Records*, 2011 WL 3667335, at *5 (same).  Third-party sellers who self-register to sell products in the Amazon Marketplace must accept Amazon's seller agreements, which provide penalties for non-compliance, including termination.

---

[11] In a red herring, Plaintiff complains that Amazon failed to produce its DMCA Standard Operating Procedure until after discovery closed.  As he is aware, Amazon marked that document as confidential, so did not produce it until a Protective Order was entered and had to wait further until Plaintiff's new counsel substituted in. Sullivan Decl. ¶¶ 3-19.  Plaintiff did not move to compel earlier production, nor was he prejudiced since he did not bother to take any depositions.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Croman Decl. ¶ 11-12, 14-16. Amazon has a system (which Plaintiff used) for dealing with takedown notices and informs users of its repeat infringer policy. Skovgard Decl. ¶¶ 3-8. It terminates, when appropriate, sellers who infringe the intellectual property rights of Amazon or any third party. Skovgard Decl. ¶ 7. Amazon's policies have been found sufficient because they notify users and inform repeat infringers that they may be terminated. *Corbis*, 351 F. Supp. 2d at 1101-1102.

Plaintiff appears to argue that if Amazon does not *immediately* terminate an alleged infringer (repeat or not), it does not satisfy the statute. *See* Motion at 20, 22. That is an incorrect statement of the law – which does not require termination of an alleged infringer, much less immediate termination. The DMCA utilizes the term "repeat infringer" without defining it. *Corbis*, 351 F. Supp. 2d at 1100-1101. Thus, "[c]ases that have addressed this issue generally raise two questions, [t]he first is whether the service provider adopted a procedure for receiving complaints and conveying those complaints to users." *Id.* at 1102. As Plaintiff admits, Amazon receives complaints and conveys them to its users (the sellers). "If such a procedure has been adopted, then the second question is whether the service provider nonetheless still tolerates flagrant or blatant copyright infringement." *Id.* (citing *Perfect 10, Inc. v. Cybernet Ventures*, 213 F. Supp. 2d 1146, 1177-78 (C.D. Cal. 2002)). To demonstrate that Amazon continues to tolerate flagrant or blatant infringement, Plaintiff must provide evidence of *specific* instances where Amazon tolerated repeat infringement by its users. *Id.* at 1103. He offered no such evidence.

Instead, Plaintiff argues that if Amazon has received more than one takedown notice related to a particular third-party seller, that alone shows that Amazon tolerates flagrant infringement. Motion at 22. But he offers no legal support for this theory and his evidence does not support it. Plaintiff sent three takedown notices for products offered by three *different* sellers. SUF 6, 17, 26; Skovgard Decl. ¶ 9; Tarpey Decl. ¶ 3, 8. At best, he could claim that Arrick's Collectables had two of the four Accused Products, and his one notice regarding that seller might be counted as

AMAZON OPP. TO PLAINTIFF'S MOT. FOR PARTIAL SUMMARY JUDGMENT
DWT 23525203v1 0051461-000296

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

notice of two alleged infringements.  But these are not specific instances of Amazon tolerating *repeat* infringement by the same seller.  Indeed, even receiving a DMCA-compliant notice is "not the *sina qua non* of copyright liability… A copyright owner may have a good faith believe [sic] that her work is being infringed, but may still be wrong."  *Corbis*, 351 F. Supp. 2d at 1105.  Thus, notices of infringement themselves are not evidence of blatant copyright infringement.  *Id.*; *UMG Recordings*, 665 F. Supp. 2d at 1117.  In any event, Amazon promptly disabled the Detail Pages once it received Plaintiff's notices.  Thus, the evidence shows that Amazon disables infringing content, not that it tolerates flagrant infringement.[12]

Nor does Plaintiff fare better with speculation about Amazon's policies.  He claims Amazon does not know the true identity of its sellers (incorrectly stating that it failed to identify seller "magsnmoreamaz"), and thus does not track sellers to determine whether they re-open accounts under a different name.  Motion at 21.  In truth, Amazon identified in documents and Initial Disclosures the three sellers' contact information, including the email address which Amazon used to contact "magsnmoreamaz" upon receiving Plaintiff's DMCA notice.  Plaintiff's Exhibit 5; Sullivan Decl. ¶¶ 7, 19; Skovgard Decl. ¶ 11.  Moreover, service providers have no affirmative duty to police their users and do not need to track repeat infringers.  *See Shelter Capital*, 667 F.3d at 1037; *Perfect 10, Inc. v. CCBill*, LLC, 488 F.3d 1102, 1109-10 (9th Cir. 2007); *Io*, 586 F. Supp. 2d at 1148; *Corbis*, 351 F. Supp. 2d at 1111.  "An infringement policy need not be perfect; it need only be reasonably

---

[12] Plaintiff challenges Amazon's repeat infringer policy as being ineffective because it does not terminate a repeat infringer after 2-3 notices (or even after a "first strike") of infringement, as he claims some other (*unnamed*) service providers do.  This argument is irrelevant because there were not repeat infringement notices from Plaintiff related to the specific third-party sellers at issue here.

In any event, section 512(i) and the case law set no number of infringement notices that must be received in order to terminate a user.  (And paragraph 41 of Plaintiff's declaration attesting to other unnamed service providers' policies is improper hearsay and lacks foundation).  Instead, the statute only requires a policy that provides for termination of repeat infringers "in appropriate circumstances," which should depend on circumstances for a particular service provider.  Given the volume of sellers and their listed products on the Marketplace, Amazon's policy is sufficient.

17

AMAZON OPP. TO PLAINTIFF'S MOT. FOR PARTIAL SUMMARY JUDGMENT
DWT 23525203v1 0051461-000296

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

implemented." *Corbis*, 351 F. Supp. 2d at 1103.

### 3. Amazon Does Not Interfere With Standard Technical Measures (§ 512(i)(1)(B)).

As the *Corbis* court held, Amazon "accommodates and does not interfere with standard technical measures" taken by copyright owners to protect their intellectual property. 351 F. Supp. 2d at 1106. Plaintiff argues that Amazon should take *additional* steps to help copyright owners, citing his experience that other service providers (such as eBay) provide methods for finding previously sold items and to publicly disclose how many items are sold. SUF 59-60. In addition to being improper hearsay, Plaintiff's experience with other service providers is irrelevant – because there is no legal requirement to provide such additional functionality to help copyright owners. The statute only requires that Amazon does not *interfere* with standard technical measures taken by copyright owners, which Amazon satisfies. Wiggans Decl. ¶ 16. Indeed, Plaintiff's ability to find the Accused Products on the Website confirms that Amazon does not interfere with standard technical measures.

## V. AMAZON DOES NOT HAVE SECONDARY LIABILITY.

Even if the DMCA did not provide a complete defense, Plaintiff failed to show secondary liability because numerous facts are disputed - including issues of Plaintiff's copyright ownership (SUF 1-3); whether his works are unpublished (SUF 4, 14, 23, 32, 61); whether there was direct liability by third-party sellers (SUF 15, 24, 33, 62) – or can be found in Amazon's favor, *i.e.,* whether Amazon's storage of product images constitutes secondary infringement (SUF 39-50).

### A. Plaintiff Did Not Show Direct Infringement by Sellers.

Plaintiff does not (and cannot) argue that Amazon has direct liability. Instead, he contends that Amazon should be secondarily liable for the third-party sellers' acts. Motion at 12-13. But Plaintiff does not satisfy the threshold of proving direct infringement by the sellers because he did not, at his deposition, substantiate facts demonstrating that he owns the copyrighted works at issue, that they were never

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

published or authorized for license or re-sale, or even of his investigation regarding the Accused Products. *See* Rosen Depo. II 34:15-67:17. While Plaintiff alleges that his photos are "indisputably original works of authorship" and are unpublished, he could not answer deposition questions on these topics. Moreover, he failed to answer deposition questions about whether the third-party sellers may have acted within their rights - such as under a license from him or by lawfully re-selling an authorized product under the First Sale doctrine in 17 U.S.C. §109. This renders his declaration unsupported, leaving material disputes about whether direct infringement occurred.

**B.    Amazon Is Not Contributorily Liable.**

Even if Plaintiff proved direct infringement by third-party sellers, he has not established contributory infringement by Amazon. To do so, he must prove "that Defendants induce, cause, or materially contribute to the infringing conduct." *Visa Int'l Serv.*, 494 F.3d at 796. This requires knowledge of infringing activity and a material contribution or assistance to the infringement. *See* 3 Nimmer on Copyright §12.04[a][3][a]; *Perfect 10, Inc.*, 508 F.3d at 1172. When a software platform or application facilitates infringement but is also "capable of substantial noninfringing uses," its provider will not have contributory liability unless it knows of specific instances of infringement and fails to act, *Shelter Capital Partners*, 667 F.3d at 1037, or actively encourages infringement. *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913, 936-37 (2005). Plaintiff presents no such evidence.

Amazon was not aware the Accused Products infringed Plaintiff's works until he sent his takedown notices; it then disabled the Detail Pages. Plaintiff argues that Amazon is contributorily liable for its *post*-DMCA notice "failure to purge" the image files and continuing to provide those images through his order history and through direct URL links. Motion at 14. But the continued storage of image files alone cannot support contributory liability as it did not contribute to any direct *infringement* by a third party (such as a seller). Amazon's removal of Detail Pages severed links between the image server and the Accused Products, making the image

AMAZON OPP. TO PLAINTIFF'S MOT. FOR PARTIAL SUMMARY JUDGMENT
DWT 23525203v1 0051461-000296

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

files unsearchable. Wiggans Decl. ¶ 13. Plaintiff offers no evidence that any sellers conducted further infringing activity using those image files from Amazon's image server. Nor does he have evidence that anyone else accessed the image files from the URL links after his takedown notices. And Plaintiff's own attempts, after Amazon disabled the Detail Pages, to access those URL links does not give rise to secondary liability because there was no direct infringement by another user (*e.g.,* a seller).[13]

Thus, Amazon did not make images available "for public distribution" after it disabled access to the Accused Products. Wiggans Decl. ¶ 13. Plaintiff's repeated description of Amazon's image server as "publicly available" does not make it so; in truth, image server files are not searchable by the public. *Id.,* ¶¶ 12-13. In cases cited by Plaintiff, *Hotaling v. Church of Jesus Christ of Latter-Day Saints*, 118 F.3d 199 (4th Cir. 1997) and *A&M Records, Inc. v. Napster*, 239 F.3d 1004 (9th Cir. 2001), the plaintiffs had evidence of actual public distribution of their works to users (through an online library or peer-to-peer file-sharing) - a far cry from Amazon's storage on an internal server. And *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146 (9th Cir. 2007), supports Amazon here; as with Google there, Plaintiff cannot show "deemed distribution" based on uploaded product images that are *not* communicated to computers of people using a search engine. *Id.* at 1162. Amazon did not make image files available to the public after it disabled the Detail Pages. It cannot be deemed to have distributed copies under the reasoning of *Hotaling* or *Napster*, and is not contributorily liable.

### C. Amazon Is Not Vicariously Liable.

Vicarious liability exists where a defendant "profit[s] from direct infringement while declining to exercise a right to stop or limit it." *Grokster*, 545 U.S. at 930.

---

[13] Plaintiff's citation to *Olan Mills, Inc. v. Linn Photo Co.*, 23 F.3d 1345, 1348 (8th Cir. 1994), is inapposite. The issue is not whether his investigative use of the URLs displayed the product images in violation of his rights. It is whether Amazon can be liable for mere storage of image files that were otherwise inaccessible to users and not used by sellers for any further infringing activity after Amazon disabled the Detail Pages. *See Shelter Capital*, 718 F.3d at 1019.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

The defendant must have: "(1) the right and ability to supervise the infringing conduct, and (2) a direct financial benefit from the infringing activity." *Visa Int'l Serv.*, 494 F.3d at 802.  As discussed in § IV.B, Plaintiff proves neither element.

## VI.   AMAZON MADE FAIR USE OF THE PRODUCT IMAGE FILES.

To challenge fair use, Plaintiff again relies largely on supposed absence of facts supporting the defense.  SUF 76.  In truth, Amazon has plentiful evidence (including from its discovery responses).  *See* Amazon's SGD 82-89.  Its storage of product image files constitutes fair use, which is a complete defense. *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 578 (1994); *Kelly v. Arriba Soft Corp.*, 336 F.3d 811, 820 (9th Cir. 2003).   Because the factors in 17 U.S.C. § 107 weigh decisively in Amazon's favor and or are neutral, the Court can find there is fair use.

### A.   Purpose and Character of the Use

The first factor is "[t]he heart of the fair use inquiry." *Davis v. The Gap, Inc.*, 246 F.3d 152, 174 (2d Cir. 2001).  It looks to whether the use is commercial and whether it is transformative.  *Sofa Entm't, Inc. v. Dodger Prods., Inc.*, 782 F. Supp. 2d 898 (C.D. Cal. 2010).  Plaintiff argues that Amazon's use was "purely commercial" (Motion at 17) because Amazon's storage of image files was done *to connect* users to Detail Pages selling the Accused Products.   But even under his theory (for which he offers no legal support), there was no connection of users to Detail Pages selling products *after* Amazon responded to his takedown notices.

Even before Amazon disabled the Detail Pages for the Accused Products, its use of product image files was transformative, not commercial.  The image files are *storage* copies on an image server separate from the commercial Detail Pages of the Amazon website.  When Detail Pages are live, the image files serve a *technical* purpose by linking to the Detail Pages to display an image of the seller's offered product.  Wiggans Decl. ¶ 5.  Moreover, the dispute is only over Amazon's archival storage of the image files *after* Plaintiff sent his takedown notices and *after* Amazon disabled access to the Detail Pages – when Amazon derives no financial benefit from

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

maintaining image files without the Detail Page links.  In addition, the image files are not tagged with any searchable information (such as the name of the model depicted), making them unavailable for users searching Amazon's catalog or the Internet.  *Id.*, ¶ 13.  Even if users do have the direct URL links, without a corresponding Detail Page, there is no product to link to and sell, which is how Amazon makes its fees.  Skovgard Decl. ¶ 6.  Thus, the persistence of images on Amazon's storage servers did not serve a direct commercial purpose.  *See Fox Broadcasting Co. v. Dish Network*, -- F.3d --, *16 (9th Cir. Jan. 24, 2014) (first factor weighs in favor of fair use where customer home viewing was a noncommercial, nonprofit activity).

Instead, Amazon's use of the image files is transformative – both before and especially after it disabled the Detail Pages.  The key question is "whether the new work merely supersedes" the plaintiff's work "or instead adds something new, with a further purpose or different character …."  *Kelly*, 336 F.3d at 818.  Unlike in digital download-type cases such as *Napster*, 239 F.3d at 1015, or *Arista Records LLC v. Myxer Inc.*, 2011 U.S. Dist. LEXIS 109668, *115-116 (C.D. Cal. 2011), the copying here was not for the purpose of saving the expense of purchasing authorized versions of Plaintiff's photographs.  Rather, the sellers sold a product that allegedly used Plaintiff's photographs, and further transformed those works by digitizing an image of the Accused Product and uploading that file to Amazon's image server, which automatically assigns a URL address to the images.  The sellers then link an image to a Detail Page to display the product image with the seller's offering.  Amazon's only disputed use was post-notice storage on its image server, which was transformative for technical purposes; Amazon's storage did not supplant Plaintiff's photographs because it did not display or use Plaintiff's works on their own accord.   Moreover, even with a direct URL link to a product image file, a user cannot purchase any product from that link.  Skovgard Decl., ¶ 6.  This factor weighs in favor of fair use.

**B.     Effect upon Potential Market for or Value of Plaintiff's Work**

This factor examines whether the defendant's use "usurps or substitutes for the

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

market of the original work." *Castle Rock Entertainment v. Carol Publishing Group*, 150 F.3d 132, 145 (2nd Cir. 1998).  A transformative work "is less likely to have an adverse impact on the market of the original than a work that merely supersedes the copyrighted work." *Kelly*, 336 F.3d at 821.  Further, when (as here) the defendant's use has no commercial purpose, likelihood of market harm must be demonstrated by Plaintiff. *Sony Corp. v. Universal City Studios*, 464 U.S. 417, 451 (1984).  Plaintiff incorrectly tries to shift that burden by arguing that Amazon presented in discovery no evidence of the effect of its use on his market.  Motion at 18.  But Amazon produced evidence that the only sales of Accused Products were two items purchased by Plaintiff.  Skovgard Decl. ¶¶ 18-19, and Ex. O.  The fact that no one – except Plaintiff – bought the Accused Products proves there was no adverse impact on the market for, or value of, his works.[14]  And once removed from the Detail Page, there can be (and were) no sales of the Accused Products.  *Id.,* ¶ 6.

Plaintiff claims he licenses his works (*e.g.*, for use in magazines).  Rosen Depo. II 43:23-44:25.  But he claims to have never licensed or tried to license the works at issue here.  Thus, Plaintiff has no evidence that he ever made any money from his works, and if he never published them there is no market to harm.  Amazon's internal server retention of image files does not compete with any market for Plaintiff's works - especially because there is no evidence that anyone other than Plaintiff accessed the URL links to the image files for any reason.

**C.     Remaining Factors**

**Nature of the Copyrighted Work.**  While creative works such as photographs are at "the core of intended copyright protection," *Campbell*, 510 U.S. at 586, this factor is rarely controlling, *see Davis*, 246 F.3d at 175.  However, a work that has been published is entitled to less deference than an unpublished work.  *Harper &*

---

[14]Perhaps that is because Plaintiff's works have limited value.  Another judge in this District awarded Plaintiff minimum statutory damages of $200 per work (after finding no willful infringement by a defendant who lacked Amazon's defenses).  *Rosen v. Netfronts, Inc.*, 2013 U.S. Dist. LEXIS 96532 (C.D. Cal. July 9, 2013).

AMAZON OPP. TO PLAINTIFF'S MOT. FOR PARTIAL SUMMARY JUDGMENT
DWT 23525203v1 0051461-000296

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*Row, Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 564 (1985); *Kelly*, 336 F.3d at 820 ("[p]ublished works are more likely to qualify as fair use because the first appearance of the artist's expression has already occurred").  Plaintiff could offer no testimony as to how his works ended up in a third party's hands to create and sell the Accused Products (again because he could not, in his deposition, explain anything about his declaration).  The product images as viewed online did not contain his watermark, which appears on the deposit copies attached to his copyright registrations, arguably demonstrating that he made them available or published them to someone.  (In fact, the Charlotte Lewis image is an *autographed* glamour portrait, allegedly authenticated, which is inexplicable if Plaintiff never published, licensed, or made the image available to anyone.  Tarpey Decl. ¶ 4.)  At the very least, there is a disputed question as to how and whether the works were ever published.

**Amount & Substantiality of Portion Used**.  Although the image files evidently copied most, if not all, of Plaintiff's works of Erika Eleniak and Charlotte Lewis, and a portion of the registered compilation containing photographs of Ali Landry, this degree of copying "does not preclude fair use per se."  *Kelly*, 336 F.3d at 820.  Rather, "[i]f the secondary user only copies as much as is necessary for his or her intended use, then this factor will not weigh against him or her."  *Id.* at 820-21.  Where the purpose of Amazon's retention of image files was to archive previously available products, their wholesale reproduction is not a substantial taking from a qualitative perspective.[15]  This factor favors Amazon (or is neutral).

## VII.   PLAINTIFF FAILURE TO BE MEANINGFULLY DEPOSED PRECLUDES SUMMARY JUDGMENT ON THE ADDITIONAL DEFENSES

Plaintiff claims the First Sale Doctrine is inapplicable because he never authorized or licensed copies of his works.  Motion at 25.  But it is possible that whoever created the Accused Products properly acquired or licensed rights to

---

[15] The pixel size for product image files – which enhances a user's interaction on Amazon's website– is irrelevant to how much of Plaintiff's work was used.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Plaintiff's works.  At deposition, Amazon attempted to learn how Plaintiff's works – which he claims to have never published – could fall into someone else's hands to create the Accused Products; but Plaintiff could not recall any meaningful facts, even from his declaration.  Rosen Depo. II 69:12-21.  The Court can thus disregard the declaration or find there is a dispute over Plaintiff's claim that he never published his works.  At the least, this raises a triable issue over whether the Accused Products could have been an authorized copy protected by the First Sale Doctrine.

It also raises triable issues for the "No Primary Liability" and invocation of Third-Party Defenses.  If a third party had the right to use his works to create the Accused Products, Amazon cannot be secondarily liable (because there is no direct liability, such as under the First Sale Doctrine).  It is also possible that Plaintiff granted a release of liability or license to one of the sellers.  He sued JG Autographs over the Accused Product (autographed portrait of Charlotte Lewis) from that seller at issue here, and settled the case.  Sullivan Decl. ¶¶ 20-24.  If the settlement agreement included a release of liability or a license to use Plaintiff's work in that product, JG Autographs would have no direct liability and Amazon could not be secondarily liable.  Again, Plaintiff gave no meaningful testimony about these issues at deposition, creating a triable issue.  Rosen Depo. II 126:15-128:16.

## VIII.  CONCLUSION

Plaintiff is seeking a windfall from a theoretical harm.  Amazon expeditiously removed allegedly infringing content from public access from its website.  The product image files stored on Amazon's image servers did not affect Plaintiff's commercial interests and do not create liability for Amazon.


DATED: February 10, 2014            DAVIS WRIGHT TREMAINE LLP


                                    By: _____/s/  James D. Nguyen_____
                                            James D. Nguyen
                                    Attorneys for AMAZON.COM, INC.

AMAZON OPP. TO PLAINTIFF'S MOT. FOR PARTIAL SUMMARY JUDGMENT
DWT 23525203v1 0051461-000296

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899